FESTUS BEASLEY v. ABERDEEN AND ROCKFISH RAILROAD COMPANY.

(Filed 23 October, 1907).

1. **Railroads—Deeds and Conveyances—Easement—Fee.**
   A deed to a railroad company conveying "a free and perpetual right of entry, right of way and easement," etc., to and upon lands conveys the easement only, and not the fee.

2. **Same—Easement—Consideration—Tramways, the Consideration for.**
   A deed of an easement over lands for the purpose of constructing a tramway is not adequate, as a matter of law, for its use as a railroad dedicated to the public, under the law of public highways.

3. **Same—Corporations—Charter Powers—Railroads—Tramways.**
   A corporation formed under the general corporation law (Code, ch. 49, sec. 677) has no power to acquire, maintain and operate a "railroad" dedicated to public use under the general law regulating highways, and its deed to a corporation having such power of a "tram or railroad" owned by it, and provided for in its charter, can only convey a tramroad and the right to maintain and operate it as such.

4. **Same—Measure of Damages.**
   A railroad company, having acquired the right of way of a tramway and using it as a railroad, is liable to the owner of the fee for a fair compensation for the injury done his land by entering upon and constructing and operating the railroad.

CIVIL ACTION, tried before *Webb, J.,* and a jury, at April Term, 1907, of the Superior Court of CUMBERLAND County.

On 29 May, 1890, the Enterprise Land and Improvement Company was incorporated, pursuant to the general law of the State. The business proposed to be conducted by the company is stated in the articles of incorporation: "To transport and carry, for tolls, timber, lumber and produce of all kinds, naval stores and all kinds of produce and merchandise of every nature and description; and, for this purpose, may build and operate, if necessary, tramways or other roads, not meaning to include railways, and may generally do all such kinds of work and business," etc. On 9 June, 1890, Malcom McInnis, under whom plaintiff claims title to the land described in the complaint, executed a deed to the said corporation in consideration of one dollar and "benefits to be derived," etc.; "a free and perpetual right of entry, right of way and easements at any and all times, for the purpose of surveying, locating, building, etc., the said road, its depots, station houses and bridges, in, through and over a strip of land 130 feet wide—that is to say, measuring 65 feet on each side of said road." Thereafter the said corporation executed a mortgage on all of its property, right of way, etc., to the Lima Machine Works. The mortgage was foreclosed and the same property conveyed to Henry M. Sherrin and two others. Such title as they acquired passed to the defendant, Aberdeen and Rockfish Railroad Company. Malcom McInnis, on 14 September, 1897, conveyed to John Beasley the tract of land over which the right of way was granted, who, on 25 January, 1898, conveyed to the plaintiff. The evidence on the part of defendant tended to show that the Enterprise Land and Improvement Company built a tramroad, of wooden rails, across the land. No cuts or fills were made. The testimony on the part of plaintiff tended to show that the tramroad was operated two years; that it was discontinued five or six years; the timber rotted and burned. In 1897-'98 it was rebuilt, and operated about two years; this was by

Sherrin and Campbell.   It was not operated when plaintiff bought the land.    After the Enterprise Land and Improvement Company quit operating, it was destroyed by every one who owned the land on it.   Other persons had conveyed rights of way.    In two or three years after Sherrin and Campbell ceased operating, defendant entered and built a railway, standard gauge, on the right of way, and is now operating it, hauling freight and passengers.    Defendant has been operating a railroad for about three years.    This action is brought to recover damages for the entry upon and appropriation of the roadbed by defendant.    His Honor being of the opinion that plaintiff was not entitled to recover, so instructed the jury.    Plaintiff excepted.    Judgment for defendant. Appeal by plaintiff.

*Sinclair & Dye* and *J. S. Newton* for plaintiff.
*Robinson & Shaw* for defendant.

CONNOR, J., after stating the facts: It is conceded that the deed from Malcom McInnis to John Beasley, under which plaintiff claims, covers the tract of land described in the complaint, over which defendant has constructed its track and is now operating the business of a common carrier.   The right of the plaintiff, therefore, to maintain this action depends upon the answer to the second issue, "Is the plaintiff the owner of the strip of land mentioned and referred to in the complaint?"   His Honor instructed the jury to answer the issue "No."   In any aspect of the case this was error— doubtless inadvertent on the part of the Court and counsel. The utmost which defendant could claim under the deed from McInnis to the improvement company, through which it deraigns its title, is an easement to use so much of the strip of 130 feet as is necessary to construct and operate its road. *Olive v. Railroad,* 142 N. C., 257, and cases cited.   No land is conveyed, but a "right of way" and easement.   The title to the land, subject to such easement, remained in McInnis and

passed to plaintiff.    The real questions, however, presented
in the record and argued before us are (1) the extent and
character of the easement, and (2) whether it has been lost
by abandonment.    Plaintiff seeks in this action to recover
damages, or, speaking more accurately, compensation for the
entry upon his land and subjecting it to the burden of defend-
ant's railroad track.    He concedes that the land may be sub-
jected to the burden by defendant, in the exercise of the right
of eminent domain, by proper proceeding.    He alleges, how-
ever, that its entry was a trespass.    Defendant, on the other
hand, insists that by the deed from McInnis to the improve-
ment company a perpetual easement passed, entitling the
grantee and its successors to build, maintain and operate a
railroad of standard gauge and used for the purpose of carry-
ing freight and passengers.    The solution of this question
depends upon the construction of the deed.    It will be ob-
served that the charter of the improvement company was
obtained under the provisions of the general law then in force
(Code 1883, sec. 677), and not under statute providing for
incorporating railroad companies.    Chapter 49, section 677,
expressly excepts from the corporate powers granted building
railroads.    The charter empowers the company "to build and
operate, if necessary, tramways or other roads, not meaning
railways."

The deed from McInnis contains the following recital:
"Whereas, the party of the second part contemplates building
a tram or rail road," etc.    The words of the grant are: "a
free right of entry, right of way, etc., for the purpose of
locating said road, its depots, station houses, bridges, etc.,
necessary and convenient for the use, operating and business
of said road."    Pursuant to this grant, made in 1890, the
improvement company constructed a wooden tramway over
the land.    After using it some time, having mortgaged its
property and easements, they passed into the hands of natural
persons, who used it for about two years, and "quit operating

it about 1900." Thereafter the defendant corporation, conceded to have power to build and operate a railroad, as a common carrier, acquired such right as passed to the improvement company, and proceeded to build and operate a railroad over the land owned by plaintiff. Before defendant acquired the easement the wooden tramway had practically disappeared—been burned or had rotted. It is manifest that the improvement company had no power to build or operate a railroad, and, therefore, no capacity to take and use an easement for that purpose. If it had attempted to do so, its acts would have been *ultra vires,* and, at the suit of the State, its charter forfeited. The deed, if construed to grant such power, would have been in such suit declared void, and as the consideration was contemplated "benefits" from the road, the easement would have been at an end. It is settled by the decisions of this Court, although held otherwise by the Supreme Court of the United States and other State courts, that the right to avoid the deed is confined to the State. Womack Private Corporations, sec. 132, *et seq.,* where the authorities are collected and commented upon. We are of the opinion, however, that by a proper construction of the deed no easement passed other than the company was authorized to take and use. The words "tram or rail road" should not be so construed as to invalidate the grant. It may well be that they were used as synonymous. The word "railroad," while in general use understood to signify a road constructed of crossties, upon which iron rails are placed, and dedicated to public use, under the general law regulating public highways, may well be construed, as used in the deed, as a private road, such as the improvement company was authorized to construct, with iron rails. So understood, it would be but a tramway, built of iron instead of wooden rails. This construction conforms to the charter and the evident intention of the parties, as manifested by their conduct. It is an elementary rule of construction that parties will be presumed to have used lan-

guage effectuating a lawful purpose rather than one which is unlawful.    We must assume that the owners of the Enterprise Land and Improvement Company intended to preserve the powers conferred by their charter rather than to expose their corporation to a suit by the State for acting *ultra vires.* We have construed such grants of easements to railroads as conveying no more than may be reasonably within the contemplation of the parties.    *Hodges v. Tel. Co.,* 133 N. C., 225. Illustrating the principle, *Redfield, C. J.,* in *Hill v. Railroad,* 32 Vermont, 68, says: "A contract to convey land for a particular use, or to a party having capacity to acquire a certain estate in land for a particular use, must of necessity carry the implication of such limitation upon the estate to be conveyed."    The grant of such easement as is necessary or convenient for the operation of "said road" should be confined to such "tram or rail road" as the charter authorized the grantee to construct and operate.    As said by *Battle, J.,* in *Railroad v. Garrison,* 85 S. W., 81 (Ark.) : "The right of way for a tramway does not imply the right to construct and operate a railroad.    The owner of the land might be willing to waive compensation for the first, when he would not for the latter."    It is a matter of common observation that tramways or, as sometimes called, railroads constructed by lumber companies for a temporary purpose, destroying but little timber, requiring no cuts or fills, are of little damage to lands. Many persons, either for some benefit accruing, or to aid and encourage improvement, give such right of way, who would be surprised to find that they had thereby imposed a permanent burden upon their lands, with much larger powers and much greater injury incident to the building and operation of a railroad than they contemplated.    In this case it is in evidence that at the time plaintiff purchased the land the tramway had disappeared—there was nothing more than a "wagon road" where the tramway had been.    We think that it would be doing violence to the language of the charter of

the improvement company, the language of the deed and the intention of the parties to hold that a permanent easement for the construction and operation of a railroad was granted. By construing the language of the deed as granting a right of way for a tramway we avoid these difficulties and relieve the land of a burden which the company had no right to impose and which we do not think the grantor intended to create. This view of the case renders it unnecessary to discuss a number of interesting questions raised upon the record. The plaintiff is entitled to recover of defendant a fair compensation for the injury done his land by entering upon it and constructing the railroad. When this is fixed and paid, the defendant will acquire the easement to use the land in the same manner, for the same purpose and to the same extent as if it had acquired the easement by condemnation. *Brown v. Power Co.,* 140 N. C., 333.

We think that there was evidence proper to be submitted to the jury upon the question of abandonment of the easement, but, as the view which we take of the record entitles the plaintiff to recover, it is unnecessary to discuss that question. There must be a

New Trial.