GORDON H. CILLEY ET AL. v. G. H. GEITNER ET AL.

(Filed 21 December, 1921.)

**1. Wills—Estates—Contingencies—Vested Rights.**

After devising and bequeathing his real and personal property to his children, the testator directed his executors to keep his estate intact until the death of his wife, and "after the death of my wife, to distribute and divide my estate among all of my children, share and share alike, the children of any deceased child of mine taking his or her share, provided that if any of my children are dead without lineal descendants, the share of such child or children shall go to my other children, equally" : *Held*, the contingency determining those who should take was the death of the testator's wife, or the children or grandchildren of the testator then living, the latter taking under the testator's will, and not as heirs at law of their deceased parent.

**2. Same—Husband and Wife—Descent—Husband's Interest—Curtesy.**

Where the grandchildren of the testator have taken as survivors, after a life estate of their mother, under the terms of the will of their deceased grandfather, their father cannot be entitled to take any interest therein as representative of his deceased wife, or as tenant by the curtesy, or agree with the guardians of his minor children to any extent that would affect their rights under the will.

**3. Guardian and Ward—Where Appointed—Wills—Testator—Domicile.**

Where the infant grandchildren of the testator take upon a contingency, as directed by the will, properly probated here, it is required that the guardian appointed be a resident of this State, according to our law, unless the funds have been properly removed to another state, C. S., 2195, 2196 ; and the law of this State governs the interpretation of the will when the testator died domiciled here.

HOKE, J., dissenting.

APPEAL by defendants from *Finley, J.,* in chambers at Wilkesboro, 9 July, 1921, from CATAWBA.

A. A. Shuford died in Catawba County in May, 1912, his will being probated 11 May, 1912. His widow dissented from his will, which was construed *In re Shuford,* 164 N. C., 133. She died 1 March, 1921. Her dissent did not in any manner affect the rights of the devisees and distributees under the will. The annual allowances provided therein were paid until the time of her death, when, in accordance with the terms of the will the surviving executors, the defendants Geitner and Menzies, proceeded to divide the properties belonging to the estate of their testator—setting apart a one-seventh portion, specifically described, to the "Cilley heirs," one-seventh to James C. Shuford, and at their request, five-sevenths by specific description to the other devisees. The executors and these devisees are parties defendant.

A. A. Shuford left surviving him his widow, who has since died (1 March, 1921), and 7 children, one of whom, Maude E. Cilley, died intestate 19 June, 1912, domiciled in Philadelphia, Pa. She left her surviving her husband, Fordon H. Cilley, and two minor children, Alda V. C. Cilley and Adelaide H. Cilley, who were the only next of kin and heirs at law of Maude E. Cilley. J. L. Cilley has qualified as administrator of the estate of Maude E. Cilley, deceased, in this State, and Alfred G. Clay, has qualified as guardian of the above two infants in the orphan's court of Philadelphia, and these are the petitioners in this proceeding.

The petitioners admit that the estate has been carefully and properly managed, and that the division made by the surviving executors is fair and equitable, but they ask that as to the properties allotted to the "Cilley heirs," the petitioner Gordon H. Cilley, the son-in-law of the testator, be decreed the owner of one-third interest thereof and that Alfred G. Clay, guardian, be decreed the owner of two-thirds undivided interest therein. This is the sole question presented in this case. It further appears from the petition that such decree is asked because of an agreement by the petitioner, Gordon H. Cilley, with Alfred G. Clay, the guardian of his two infant children aforesaid, and that "said agreement is without prejudice to the rights of the petitioner, Gordon H. Cilley, to claim otherwise in the event that the prayer of this petition be not granted."

The clerk entered judgment that the properties which the executors had allotted to the "Cilley heirs" should be sold by the commissioner, Mark Squires, named by the court, and that "the funds in the hands of the said Mark Squires shall, upon confirmation of any sale made by him, be paid over to the said Alfred G. Clay, guardian of. the two infants above stated, to be disbursed or administered by him according to their respective rights."

The surviving executors, Geitner and Menzies, are advised that this judgment authorizes said Alfred G. Clay to administer these funds

according to his own determination as to the rights of the petitioners, or in compliance with the agreement above set forth in the petition, and are advised further that said properties should be administered and disbursed according to the provisions of A. A. Shuford's will, as construed under the laws of North Carolina, and that the beneficiaries of the "Cilley heirs" take as devisees and legatees of A. A. Shuford, and not as heirs and next of kin of Maude E. Cilley, who was domiciled in Pennsylvania at the time of her death; that these beneficiaries are the two minor children of Maude E. Cilley, and that the issues raised should be determined under the laws and by the courts of North Carolina. From this judgment of the clerk the defendants, surviving executors, appealed. This judgment of the clerk was approved by the judge. The executors appealed to this Court.

*Mark Squires, Herbert V. Steelman, and John M. Abbott for plaintiffs.*

*Self, Bagby & Aiken for defendants.*

CLARK, C. J. It appears from the will of A. A. Shuford that the only specific, unconditional bequests made by him, to become effective at the time of his death, were:

1. The allowance of $2,000 per year to his widow for each and every year that she should survive him.

2. The allowance of $1,000 per year to each of the 7 children, naming them, "during the term of the natural life" of his widow.

3. Two hundred dollars a year to the pastor of the Corinth Reformed Church of Hickory during the life of his widow.

4. An allowance of $200 a year to Julius H. Shuford, and $100 a year to Mrs. Laura Ramseur, to be paid to each during the remainder of his or her life, with definite directions, (4) and (6), as to the manner and means of providing these sums after the death of the testator's widow in the event they or either of them survived her.

5. He expressly directs his executors "as long as his said wife shall live" to keep his estate undivided, managing and handling it according to their best business judgment, and (9) vests in his executors full power and authority to change any investment and to sell, convey, and convert any real estate, exercising that care which they would use in the management of their own business.

In item (7) he says: "I direct my executors, or the survivors of them, after the death of my wife, to distribute and divide my estate among all of my children, share and share alike, the children of any deceased child of mine taking his or her share: *Provided,* that if any of

my children are dead without lineal descendants, the share of such child or children shall go to my other children equally."

He further declares in this item that he does not mean that his estate shall be converted into cash, but that the surviving executors shall value and apportion it, and, in item (8), he makes provision for "meeting certain contingencies in the general division."

The closing language of the will is as follows: "In the event the said Geitner or Menzies should die, leaving the other and my wife surviving, then I direct them to agree upon and nominate an executor as a substitute for the deceased. The person so nominated to have all power and authority as an executor as though he were specifically herein named as such, and in case of the death of any executors during the lifetime of my said wife, I direct the vacancy to be filled in the same way in order that there may be two executors to survive my wife and coöperate with each other in valuing and distributing my estate under the provisions of this will."

It seems clear that the question as to what individuals would become the recipients of the bulk of the estate and its surplus earnings was not to be determined, and could not be, until the death of his widow, at which time the property should be divided by the two executors among the children of the testator living at that time, and the children of such who should be dead leaving children, in which event the children of such deceased child taking his or her share, with a provision that when any child has died without lineal descendants, the share of such child or children should go to the other children of the testator equally.

The provisions of item 7, as above set out, are clear and unequivocal. Under the terms thereof the property devised has been properly divided into 7 equal shares, which it is admitted has been equitably and fairly done. Of these 7 shares each of the 6 living children is entitled to one share, and the other share is to go to the two children of his deceased daughter, Maude E. Cilley. There is no contingency under which the son-in-law, the petitioner, Gordon H. Cilley, is entitled to receive any part of the estate. The two infant children of the deceased daughter take, not as the heirs of the mother, but directly from the testator under item 7 of the will. And, therefore, their father, Gordon H. Cilley, has no interest as representative of his wife. Nor could he derive any by any agreement made with the guardian of said infants, nor can the court authorize said guardian to disburse or administer the one-seventh share accruing to said infants, according to his own judgment, nor under the laws of this State could said fund accruing to his said children be turned over to a guardian appointed by the courts of another State. It would be necessary that a guardian should qualify in this State. If it is desired to remove the fund to another State, proper proceedings must

be taken in accordance with our statute, C. S., 2195, by petition filed before the clerk of the Superior Court, and judgment rendered thereon in the manner provided in C. S., 2196.

The terms of item 7 of the will are clear and explicit, and capable of but one construction, which is as above stated. In *Anderson v. Felton,* 36 N. C., 55, where the provision of the will was for a division "at the time my daughter Sarah arrives to 15," *Ruffin, C. J.,* held that only those children would take who were living when Sarah arrived at 15, saying that until the time appointed for the division the legacies did not vest. To the same effect, *Threadgill v. Ingram,* 23 N. C., 577; *Skinner v. Lamb,* 25 N. C., 157; *Gregory v. Beasley,* 36 N. C., 25; *Nelson v. Moore, ib.,* 31.

"Where a legacy is given *'at* 21, or *in case* or *provided'* the legatee attain such age, these words annex the time to the substance of legacy, and the legatee's right to it will depend on his being alive at the time fixed for payment." *Green v. Green,* 86 N. C., 546; *Giles v. Franks,* 17 N. C., 521. There are numerous other cases to the same effect.

In *Blake v. Blake,* 118 N. C., 575, it is said: "Under the devise in the will, which is appended to the complaint, the property was left in trust to be 'divided when the youngest child should arrive at age.' The contingency not yet having happened, a division cannot be ordered. *Green v. Green,* 86 N. C., 546. The complaint fails to state a cause of action."

*Bowen v. Hackney,* 136 N. C., 187, and *ib.,* 200, are directly in point, and are decisive of the construction to be placed upon item 7 of this will. In the first of these cases it is said, "Under a devise providing that at the expiration of the estate of a life tenant, the property given to him shall be equally divided between the children of the testator, the representatives of such children as may have died to stand in the place of their ancestors, the husband of one of the children who died without issue and before the life tenant does not take under the will, though he be the sole devisee of the wife." The point is elaborately discussed there, and is restated the second time that case was before the Court, 36 N. C., 200. And the decision has been repeated in *Clark v. Wimberly,* 171 N. C., 48; *Jenkins v. Lambeth,* 172 N. C., 466, and *Grantham v. Jinnette,* 177 N. C., 229.

In *Clark v. Wimberly, supra,* the Court says: "By the terms of the will the children of Martha L. Wimberly held an estate dependent upon their being alive and filling the description at the death of their mother, the life tenant. If they died before that time, without issue, their interest became extinct, and if they so died, leaving issue, these last became the owners of the interest of their deceased parent, but holding *direct from the testator."* In *Whitesides v. Cooper,* 115 N. C., 573, the

BROOKS v. MILLS CO.

devise was almost *in totidem verbis,* as in this case, and received the same construction, which has been followed since in *Hutchinson v. Lucas,* 181 N. C., 56.

It is perfectly clear that the children of Maude E. Cilley are entitled to the interest in this estate which she would have taken if she had survived her mother—not as her heirs or next of kin, but as devisees and legatees of A. A. Shuford.

In *Thompson v. Humphrey,* 179 N. C., 44, the Court says: "The construction of the will makes the estate of the children a defeasible fee for they may never take, as the mother may survive all of them, in which event their children would take in their places, and then, not by descent from them, but directly from the devisor under the will as purchasers." To same purport, *Smith v. Lumber Co.,* 155 N. C., 389.

The will must be construed and the distribution of the estate made according to the laws of North Carolina. *Leake v. Gilchrist,* 13 N. C., 77; *Hartness v. Pharr,* 133 N. C., 566; *Hall v. R. R.,* 146 N. C., 345.

Maude E. Cilley having predeceased her mother, Gordon H. Cilley, her surviving husband, would have no right of curtesy in any property. *Hoke, J.,* in *Jones v. Whichard,* 163 N. C., 241.

The case must be remanded that judgment may be entered in the court below, and further proceedings had, in conformity to this opinion.

Reversed.

HOKE, J., dissenting.